IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JAMES P. KERR,** | CASE NO. 1:20-CV-02504 |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| **NATIONAL FUNDING, INC.,** | |
| | MEMORANDUM OF OPINION AND |
| **Defendant.** | ORDER |

This matter comes before the Court upon the Motion to Dismiss of Defendant National Funding, Inc. ("National Funding"). (Doc. No. 5.) Plaintiff James P. Kerr ("Kerr") filed a brief in opposition to National Funding's Motion to Dismiss on December 11, 2020, to which National Funding replied on December 28, 2020. (Doc. Nos. 6, 7.) For the following reasons, National Funding's Motion to Dismiss (Doc. No. 5) is DENIED.

**I.  Background**

    **a. Factual Allegations**

On November 29, 2017, Kerr signed a personal guarantee for a business loan originated by National Funding, which was disbursed to Kerr's company, Industrial Contracting Company. (Doc. No. 5 at 1.) By 2019, the loan had gone into default, and on June 12, 2019, National Funding obtained a $331,221.96 judgment against Kerr. (*Id.*)[1]

---

[1] The facts in this paragraph are taken from documents from Kerr's bankruptcy case, discussed below, which National Funding asserts the Court may take judicial notice of in assessing National Funding's Motion to Dismiss. (Doc. No. 5 at 2 n.2.) The Court notes that while courts may take judicial notice of the existence of court documents and the proceedings in which those documents were generated, courts do not generally take judicial notice of the truth of any statement of fact contained within those documents. *See e.g.*, *Embassy Realty Investments LLC. v. City of Cleveland*, 877 F. Supp. 2d 564, 571 (N.D. Ohio 2012) (noting that, while a court may take judicial notice of the existence of public records, "[t]his is not

On December 3, 2019, Kerr and his wife filed for personal Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Ohio. (Doc. No. 1-1 at ¶ 8.)[2] As a result of the filing of Kerr's bankruptcy petition, Kerr's creditors were immediately subject to the automatic stay provision of 11 U.S.C. § 362(a)(6), which precludes any act to collect, assess, or recover any debt owed prior to the bankruptcy filing. (*Id.* at ¶¶ 10-11.)

National Funding had actual knowledge that Kerr had filed for personal bankruptcy and that all collection activity against him was stayed. (*Id.* at ¶ 12.) While Kerr's bankruptcy case was pending, National Funding did not file a motion to lift the automatic stay or object to Kerr receiving a discharge of the debt owed to National Funding. (*Id.* at ¶¶ 15-16.) However, on January 13, 2020, National Funding accessed the personal and confidential information contained in Kerr's Equifax account without Kerr's knowledge or consent for debt collection purposes. (*Id.* at ¶ 18.) On January 28, 2020, National Funding also filed a proof of claim in Kerr's bankruptcy case. (*Id.* at ¶ 13.) Kerr later received a discharge of all debt listed on Schedule E/F of his bankruptcy petition, including any debt that National Funding was attempting to collect. (*Id.* at ¶ 22.)

Kerr had no reason to suspect that National Funding, Inc. had pulled his personal and confidential Equifax credit report until he obtained a copy of his Equifax credit report dated July 28, 2020, which disclosed the pull and collection activity that occurred on January 13, 2020. (*Id.* at ¶ 19.) Kerr had not requested credit from or otherwise initiated any business relationship with National Funding at any time subsequent to his bankruptcy filing and discharge. (*Id.* at ¶ 23.)

---

to say, however, that the facts contained within these public records are appropriate for consideration by the Court"). Nonetheless, the Court includes these facts as additional background information, as they ultimately do not affect the Court's decision and Kerr does not object to their consideration or accuracy. (*See* Doc. No. 6 at 5.)

[2] The allegations contained in Kerr's Complaint are assumed to be true solely for purposes of ruling on National Funding's Motion to Dismiss.

### b. Procedural History

On July 31, 2020, Kerr filed a Complaint in the Court of Common Pleas of Cuyahoga County, Ohio, alleging that National Funding violated the Fair Credit Reporting Act ("FCRA") by accessing Kerr's consumer report from Equifax without a permissible purpose as required by 11 U.S.C. § 1681b and under false pretenses. (*Id.* at ¶¶ 27-33.) After being served with the Complaint, National Funding removed the case to this Court. (Doc. No. 1.)

Subsequently, on November 13, 2020, National Funding filed a Motion to Dismiss, seeking to dismiss Kerr's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. No. 5.) Kerr filed a brief in opposition to National Funding's Motion to Dismiss on December 11, 2020, to which National Funding replied on December 28, 2020. (Doc. Nos. 6, 7.)

## II. Standard of Review

Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

3

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

As noted above, Kerr alleges that National Funding violated the FCRA when it pulled his credit report while his bankruptcy case was pending without a permissible purpose and under false pretenses. (Doc. No. 1-1 at ¶¶ 27-33.) In its Motion to Dismiss, National Funding asserts that dismissal of Kerr's claim is appropriate because it had three permissible purposes for obtaining Kerr's credit report: (1) account review, (2) legitimate business need in connection with a business transaction, and (3) review to "determine whether the consumer continues to meet the terms of the account." (Doc. No. 5 at 4.) In addition, National Funding contends that none of these purposes were negated by the bankruptcy stay. (*Id.* at 3-7.) In opposition, Kerr responds to each of these points,

4

but generally argues that once National Funding obtained the state court judgment against him and he filed for bankruptcy, the business relationship between Kerr and National Funding terminated along with any permissible purpose National Funding had to pull Kerr's credit. (Doc. No. 6 at 3-12.) Upon review, the Court finds that Kerr has adequately stated a claim under the FCRA, and dismissal is not appropriate.

Generally, the FCRA "regulates the permissible uses of 'consumer reports,' which summarize credit history and credit worthiness, *see* 15 U.S.C. § 1681b, and creates a private right of action allowing injured consumers to recover for negligent and willful violations." *Bickley v. Dish Network, LLC*, 751 F.3d 724, 728 (6th Cir. 2014). "To maintain a claim for improper use of a credit report, the plaintiff must prove that the defendant acted with the specified level of culpability." *Id.* The plaintiff also must establish three elements: "(i) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose." *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934, 938 (S.D. Ohio 2008).

In this case, National Funding only attacks the sufficiency of Kerr's Complaint with respect to the last element—whether National Funding obtained Kerr's credit report without a permissible purpose. "[T]he FCRA provides an exclusive list of purposes for which consumer reports may be disseminated and prohibits any person from using or obtaining such information for any other purpose." *Oneal v. First Tennessee Bank*, No. 4:17-CV-3-TAV-SKL, 2018 WL 1352519, at *2 (E.D. Tenn. Mar. 15, 2018) (footnote omitted) (citing 15 U.S.C. § 1681b(a), (f)). As relevant here, the FCRA allows an entity to use or obtain a consumer report if the entity:

5

> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
>
> . . .
>
> (F) otherwise has a legitimate business need for the information--
>
>> (i) in connection with a business transaction that is initiated by the consumer; or
>>
>> (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b(a)(3)(A), (F).

In his Complaint, Kerr alleges that he filed his bankruptcy petition on December 3, 2019, which resulted in an automatic stay of all collection activity with respect to his prior debts. (Doc. No. 1-1 at ¶¶ 8-11.) Further, Kerr alleges that despite knowledge of Kerr's bankruptcy filing and the accompanying stay of collection activity that was in effect, National Funding accessed his credit report on January 13, 2020 without any permissible purpose. (*Id.* at ¶¶ 12-18.) The Court finds that Kerr has adequately alleged that National Funding acted without a permissible purpose in accessing his credit report, and, therefore, dismissal of Kerr's Complaint is not warranted.

National Funding's arguments that it acted with a permissible purpose are premature at this stage of the litigation. In line with the three permissible purposes for accessing a credit report under the FCRA noted above, National Funding asserts it was entitled to use or obtain Kerr's credit report (1) for the purpose of reviewing Kerr's account, (2) for a legitimate business need in connection with a business transaction initiated by Kerr, and (3) for the purpose of reviewing Kerr's account to determine whether Kerr continued to meet the terms of his account. (*See* Doc. No. 5 at 4.) The parties spend much of their briefing disputing whether any of these purposes remained viable after

6

the state court judgment against Kerr and his bankruptcy filing. (*See* Doc. No. 5 at 3-7; Doc. No. 6 at 5-12.)

However, the Court finds that it need not answer those questions at this time, as even if Kerr's debt to National Funding arising from the state court judgment could give rise to a permissible purpose while the bankruptcy stay was in place, that does not necessarily mean that National Funding acted with a permissible purpose. *See Rogers v. Wells Fargo Bank, N.A.*, No. 19-cv-02596, 2020 WL 1081721, at *6 (N.D. Ill. Mar. 6, 2020) ("At this point, the question is whether Wells Fargo is entitled to prevail as a matter of law – again, at the motion to dismiss stage – based on its own assertion that it acted with a legitimate purpose. The mere existence of the mortgage lien does not necessarily mean, as a matter of law, that Wells Fargo obtained his credit report for an authorized purpose."); *Germain v. Bank of Am., N.A.*, No. 13–cv–676–bbc, 2014 WL 1329710, at *3 (W.D. Wis. Apr. 2, 2014) ("Neither the complaint nor the bankruptcy court records identify the reason why defendant pulled plaintiffs' credit reports. . . . In the absence of discovery and a more fully developed record, I cannot determine whether defendant pulled plaintiffs' reports for an improper purpose or for a legitimate business reason."). National Funding has not demonstrated it is entitled to dismissal based solely on the existence of Kerr's debt, and has not identified any allegations in the Complaint demonstrating that it accessed Kerr's credit report for a permissible purpose, such as to review his account or based on a legitimate business need. Thus, to find that National Funding accessed Kerr's credit report in order to, for example, determine whether he continued to meet the terms of his account, based on National Funding's own assertions in its Motion to Dismiss would not be appropriate. Without a more fully developed record, the Court cannot determine whether National

Funding pulled Kerr's credit report for an improper purpose. Accordingly, National Funding's Motion to dismiss is denied.

## IV. Conclusion

For the reasons set forth above, National Funding's Motion to Dismiss (Doc. No. 5) is DENIED.

**IT IS SO ORDERED.**

Date: March 29, 2021

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE